[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is a suit on a promissory note in the face amount of $169,000.00 dated March 1, 1988. Said note (Exhibit A) is a demand note calling for "interest at an annual rate of 2% above prevailing base rate charged by Manufacturers Hanover Trust Co., and adjusted accordingly the first of each month." In the lower right hand corner it contains a line where a signature would normally appear. Below the line is typed "HILL TOP FARM INC." The words "Hill Top Farm Inc." appear in someone's handwriting above the line. The back of the note is signed by Thomas Lagos and Joel Kalafa.
Plaintiff has brought this action in two counts. In the first count he alleges that Kalafa signed the note but Hudson's Bay is the holder and owner of the note; that Hudson's Bay has made demand for payment upon Kalafa but Kalafa has refused to pay the amount due and that Kalafa is liable as a co-maker for all amounts including principal and interest due under the note. The allegations of the second count are the same as those in the first except that in the last paragraph the plaintiff alleges that Kalafa is liable as an endorser for all amounts including principal and interest due under the note.
The defendant admits that he signed the note, that demand for payment was made and he refused to pay. He has raised seven special defenses based upon the plaintiff's alleged misappropriation of the collateral and the proceeds therefrom and upon alleged misrepresentations by the plaintiff. In essence, he claims that the promissory note should not be enforced against him because the plaintiff has been fully paid under the note, or because plaintiff's own actions prevented Hill Top from paying the claimed debt. CT Page 1158
The plaintiff was in the business of selling mink pelts. It obtained the mink pelts from ranchers who consigned the pelts to it for sale generally at public auctions. In addition, the plaintiff regularly made loans to the ranchers to help finance their operations. The defendant is an orthodontist practicing in West Hartford, Ct. who in December of 1986 with Thomas Lagos, Sr., incorporated a company known as Hill Top Farms, Inc. Hill Top was from the time of its incorporation until the end of 1989 in the business of breeding and raising mink. The defendant was the treasurer and secretary and a 50% shareholder and one of the two directors of the corporation. Thomas Lagos was the president, a 50% shareholder and the only other director. Hill Top at all relevant times herein operated its business from certain real property in Ledyard, Ct. This property was owned by a corporation of which the defendant was a shareholder. Allen M. Rosen was the treasurer and vice president for finance of Hudson's Bay and at all relevant times herein he was personally involved in plaintiff's financial dealings with Hill Top. Plaintiff through Rosen had dealt with Thomas Lagos and members of his family for many years before Hill Top was formed.
The note was signed on March 1, 1988 together with a security agreement (Exhibit B) that provided "New York law shall apply and govern in construing all questions arising out of and affecting this agreement." It also provided that if the plaintiff were to sue on the note the defendant "will waive presentment and protest." At the end of 1986 when Hill Top first applied for an operating loan from Hudson's Bay, Lagos had an outstanding debt to Hudson's Bay in the account name of Northeast Animal Products. At all relevant times herein, Marcia Lagos was the wife of Thomas Lagos. She performed bookkeeping services for Hill Top, although never paid as an employee, and was known to Rosen.
The court finds that the defendant is an endorser on the note and in the opinion of this court the plaintiff has, under applicable New York law, established a prima facie case for recovery under the Note, having established that the defendant signed the Note as an endorser, that the plaintiff is the holder of the Note and that the defendant has refused to pay. It is the further opinion of this court that defendant has failed to prove by a fair preponderance of the evidence any one of the seven special defenses which it has raised. CT Page 1159
In his first special defense, the defendant has alleged that the note in question had been fully satisfied by Hill Top Farm, Inc., and therefore may not be enforced against him. He alleges that he was induced to sign the note in question individually because of the security agreement which he signed and which he maintains secured all of the mink on the ranch at Hill Top Farm, Inc., and same constituted the collateral for the Note; in the summer of 1989, most of the mink which constituted the collateral were killed by a defective immunization product; that Hill Top settled with an insurance company on the basis of product liability and from the proceeds of that settlement paid to the plaintiff the sum of $210,000.00 in cash in payment of the Note but that plaintiff misapplied the funds to the payment of three other notes of Hill Top Farm which were not secured.
The basic facts upon which the defendant rests this special defense have not been proven but in fact are found to be quite different from the version given by the defendant. The defendant was induced to sign the Note by Thomas Lagos; his partner. He has misquoted the language of the security agreement to fit his own version of the facts. Said agreement states quite clearly "Borrower hereby grants to the Secured Party a security interest on all life stock (including progeny thereof) which are now owned or at anytime hereafter acquired by the borrower and the products thereof . . . . including all mink and foxes on the ranch of HILL TOP FARM, INC., . . ." This misquoting of the Security Agreement occurs in the second, third, fourth, fifth and seventh Special Defenses and is more pertinent to them than to this first special defense. The plaintiff had no knowledge until after the payment of the $210,000.00 that it was generated by the settlement of the products liability suit. The plaintiff received the $210,000.00 by way of a check dated October 11, 1989 signed by Thomas Lagos whom the plaintiff knew to be the president of Hill Top Farms, Inc., which check had written on the face of it instructions to apply same to three other notes of Hill Top Farm totaling $210,000.00. The plaintiff also received a Note from Marcia Lagos dated October 10, 1989 which enclosed the $210,000.00 check and instructed it to pay the other three notes. The plaintiff knew who Marcia Lagos was and had done business with her both on behalf of, Hill Top Farm, Inc. and also on behalf of T T Farms, a separate entity, owned by Thomas Lagos, Sr. and his son which raised CT Page 1160 mink on the same premises as Hill Top Farm, Inc. The plaintiff had no reason not to follow the instructions on the check and in the letter and contrary to the allegations of the defendant, followed the instructions and properly applied the proceeds of the check as instructed. The defendant has failed to show in this defense that the plaintiff misapplied the funds.
In the Second Special Defense the defendant alleges impairment of collateral arriving at that conclusion by some tortuous logic. Defendant repeats the allegation that the security agreement indicated that plaintiff had accepted as collateral for the Note in question "all mink and foxes on the ranch of Hill Top Farm, Inc." Defendant then alleges that the plaintiff represented that it would insure the mink which constituted that collateral, meaning of course, all mink on Hill Top Farm, and that the proceeds of any such insurance would also be collateral for the Note. The defendant further alleges that the plaintiff would act as selling agent for Hill Top Farm for the mink which secured the Note, which again defendant maintains were all of the mink on Hill Top Farm. Defendant then alleges that plaintiff did in fact sell many of the mink which were on Hill Top Farm and applied the proceeds to another account and that plaintiff's alleged conduct constituted impairment of the collateral for the Note in issue. The defendant here is referring to a large number of mink which were owned by T T Farm which was the business owned by Thomas Lagos and his son and which operated on the same premises as Hill Top Farm. This organization had been in existence for sometime. The plaintiff had done business with this organization; had made loans to it; had given this business the same security agreement it had given to Hill Top Farm and the plaintiff had in fact sold certain mink owned by this business and used the proceeds to apply against debts owed by said business. The plaintiff had no reason to believe that the defendant laid claim to any of these mink or the proceeds of the sale of same and as pointed out under Special Defense Number One the Security Agreement did not include "all mink on Hill Top Farm" but all mink owned by Hill Top Farm. Not only did the plaintiff have no reason to believe that the sale of the mink was the sale of animals belonging to Hill Top Farm, Inc. and for that reason could not have impaired the collateral of Hill Top Farm, Inc., but in fact the plaintiff never had possession of the collateral and thus was not in a position to impair same in the sense in which it is referred CT Page 1161 to in the Commercial Code.
In Special Defenses Three, Four and Five, the defendant repeats the allegations contained in the first six paragraphs of the Second Special Defense and concludes that the alleged misconduct of the plaintiff prevented Hill Top Farm from performing its obligations under the Note; amounted to impairment of collateral; that the plaintiff acting through Rosen violated Section 42a-1-203 of the Commercial Code (Good Faith) and that plaintiff interfered with and failed to cooperate with Hill Top Farm's performance of its duties under the Note. These are all based upon the same allegations which have no basis in fact, i.e., a misquote and at best misinterpretation of the language of the Security Agreement, a failure to recognize the existence of T T Farms by referring to it as an illusory company, by trying to shift the burden of conservation of the collateral from itself (from Hill Top Farm) to the plaintiff and by implying that plaintiff misapplied the $210,000.00 check when in fact the plaintiff had no reason to do other than it was instructed.
To the extent that Special Defenses Two, Three, Four and Five imply that the plaintiff did sell some livestock of Hill Top Farm and failed to credit Hill Top Farm with same, this also has been disapproved by the plaintiff with records which show that in fact it did on occasion sell products from Hill Top Farm and did in fact credit Hill Top Farm's account with same. It did not, however, credit Hill Top Farm with the proceeds of sales of livestock owned by the entity known as T T Farms which entity it had done business with and had loaned money to over a three year period and which it had visited through the Agency of Rosen and Anthony Cruz who actually saw livestock of Hill Top Farm and different livestock of T T on the premises in Ledyard, CT. Mr. Cruz, being an expert recognizing the difference in the different types of mink owned by each business entity.
In the Sixth Special Defense, the defendant alleges that a certain check labeled T T Farms and signed by Marcia Lagos, in the amount of $104,652.38 dated October 11, 1989 together with merchandise received from Hill Top Farm would have satisfied the Note at issue but were misapplied or were not credited to this note. This again is contrary to the evidence. The check was in fact received and was referred to in the letter of October 10, 1989 mentioned above signed by CT Page 1162 Marcia Lagos in the first paragraph of which she states that the amount of $104.652.38 [$104,652.38] in payment in full for T 
T Farms and "will give us a zero balance due." The defendant states that the plaintiff knew or should have known that this payment constituted money paid on account of an insurance claim of Hill Top Farm and/or an insurance claim on the collateral for the note at issue. There is simply no credible evidence that the plaintiff knew or should have known this.
The Seventh Special Defense repeats all of the allegations in paragraphs One through Six of Special Defense Number Two, Three, Four and Five referring to the alleged representations made by the plaintiff and adds the allegation that at the time these representations were made plaintiff knew that defendant Kalafa was relying upon the expertise of its agents and employees with regard to the value of the collateral for the Note. The defendant then alleges the plaintiff's conduct in making these misrepresentation and in selling the mink supplied it and misapplying the proceeds to another account constituted negligent or intentional misrepresentation of material facts which induced the defendant to sign the Note in reliance upon them to his detriment and that therefore the plaintiff should be equitably estopped from enforcing the Note.
These claims of misrepresentation are contradicted by credible evidence that the plaintiff was never in communication with the defendant regarding the Note and Security Agreement. The defendant himself admitted that he never communicated with the plaintiff regarding the Note and related documents. He spoke only to Thomas Lagos.
The court is aware of the lawsuit brought by Hill Top Farm, Inc. against Lagos and T T Farms for embezzlement of the funds of the corporation which suit was brought on behalf of the corporation by the defendant. The court has read the complaint and the decision by Judge O'Neill. It is undoubtedly these activities by Lagos which have led to the allegations of an illusory business as it refers to T T Farms and the inferences that money used to pay its debts should have been applied to the Note in question. However, as stated above, this court can find absolutely no credible evidence whatsoever to support any one of the seven Special Defenses raised by the defendant. On the contrary, the court finds that they are all purely speculative. CT Page 1163
Accordingly, the court must enter judgment for the plaintiff for the entire balance due on the Note, plus interest thereon and attorneys fees. The court finds the principal of the Note to be $142,926.04. Interest thereon at the rate of $31.76 per diem equals $91,246.70 through February 3, 1994 the date of this judgment. The court finds that interest under 37-3a C.G.S. for money wrongfully withheld is not applicable to this case inasmuch as interest is recoverable under the Note.
An examination of the file indicates that an offer of judgment was made on November 25, 1992. This was within fifteen months of the date that the matter was filed in court which was August 15, 1991. Said offer of judgment was refused and the plaintiff claims interest under 52-192a
C.G.S. The amount recovered was $234,172.74 being the principal amount due on the Note of $142,926.04, plus interest of $91,246.70. Interest at 12% on account of the refusal of the offer of judgment is therefore $69,366.45 for a total judgment in favor of the plaintiff of $303,539.19 plus attorneys fees due the plaintiff from the defendant under the terms of the Security Agreement which attorneys fees will be determined by the court if not agreed to between the defendant and the plaintiff.
Hale, J.